UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICKIE L. CIESLINSKI, | ) | Case No. 1:09 CV 0487 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Vickie L. Cieslinski filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) from the administrative denial of disability insurance benefits. At issue is the ALJ's decision dated November 5, 2008, that Cieslinski does not have a severe impairment which stands as the final decision of the Commissioner. See 20 C.F.R. §404.1481. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

*Insured Status Expired December 31, 2004:*

Cieslinski alleges onset of disability on February 1, 2004 due to breast cancer when she was 47 years of age. She has worked as a cafeteria worker, desk clerk and licensed practical nurse. The only work which qualified as substantial gainful activity, however, was her work as a licensed practical nurse from October 2002 to February 2004. (Tr. 22). At the time she filed her application for benefits she was status post bilateral mastectomy and she alleged that she suffered bipolar disorder, severe clinical depression, anxiety, fibromyalgia, cardiomyopathy and stomach problems.

Her problems became worse over time, but the only relevant evidence concerns her medical status prior to the expiration of her insured status on December 31, 2004. Cieslinski must establish that she became "'disabled' prior to the expiration of h[er] insured status period." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 861 (6th Cir. 1988); 42 U.S.C. §423(a) and (c).

*Plaintiff's Contentions:*

Cieslinski challenges the ALJ's denial of disability insurance benefits at Step Two arguing that the ALJ did not follow the proper standards in accord with SSR 85-28 in finding at Step Two of the sequential evaluation under 20 C.F.R. §404.1520(a)(4)(ii) and (c) that Cieslinski did not have a severe impairment or combination of impairments, and secondly, that the ALJ should have called on a medical expert in accordance with HALLEX I-2-5-34.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole. *Barney v. Secretary of Health and Human Services*, 743 F.2d 448 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*,

3

987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Secretary*, 893 F.2d 106, 108 (6th Cir. 1989); *Richardson*, 402 U.S. at 401.

> In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record `taken as a whole.' *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and "must take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464-65, 95 L.Ed. 456 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

*Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291,

96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

*ALJ 's Findings:*

The ALJ concluded that the medical record established that through December 31, 2004, despite the existence of medical impairments of status post left breast cancer, depression, and status post hysterectomy that there was no severe impairment alone or in combination (Tr. 10). The ALJ noted that Cieslinski had undergone one "round" of chemotherapy and had been diagnosed with depression during a December 2004 hospitalization.(Tr. 10). Mentally, the ALJ found that the record supported only "mild" limitation in daily activities, social functioning, or concentration, persistence or pace and that there were no episodes of decompensation. Physically, the ALJ found

no evidence of significant limitation in the abilities to perform basic work activities as described under 20 C.F.R. §404.1521(b)(1)-(6). (Tr. 11). [1]

The second step of the sequential evaluation under 20 C.F.R. §404.1520(a)(ii) is the "medical severity" step. The regulation requires:

> (c) You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.

20 C.F.R. § 404.1520(c).

The ALJ found that physically and mentally there were no restrictions on Cieslinski's ability to perform basic work activities (See §404.1521(b) in note1), hence there was no severe impairment or combination of impairments. (See Tr. 12-13).

---

[1] 20 C.F.R. §404.1521(b) reads:

Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–
(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting

6

*Substantial Evidence to Reject Severe Mental Impairment:*

Cieslinski argues that she had severe mental impairment because she had been prescribed anti-depressants for depression in 2004 (See Tr. 213-16). However, this argument can be quickly put to rest. The ALJ had substantial evidence supporting the determination at the second step that Cieslinski's mental impairment was non-severe. As § 404.1520a(c)(4) provides, using the Psychiatric Review Technique (PRT), ratings of none or mild in the first three functional areas and none in the last functional area indicate non-severe impairment. In all other instances, the ALJ must assess whether a "severe" mental impairment meets or equals a listed impairment, and then, if not, assess residual functional capacity and the ability to perform substantial gainful activity. See §404.1520a(d)(2)&(3). State agency reviewing psychologists completed a PRT finding insufficient evidence to assess a degree of limitation in any of the functional areas for the period commencing February 2004 and ending December 2004. (Tr. 577-587, 591). While this alone did not provide substantial evidence, the ALJ looked to several medical exhibits in the record to conclude that the record did not show significant limitations in any of the functional areas.(Tr. 12). The ALJ accordingly did have substantial evidence to end the evaluation of mental impairment at the second step of the sequential evaluation process.

*Substantial Evidence to Reject Alleged Disabling Symptom of Fatigue:*

Cieslinski argues that her fatigue is a symptom arising from Cieslinski's impairment of breast cancer which "significantly limit[s] . . . physical or mental ability to do basic work activities." See 20 C.F.R. §404.1521(a). Cieslinski testified that she was sleeping anywhere from 16 to 20 hours each day "with the first radiation." (Tr. 27). The Commissioner in responding to Cieslinski's

7

arguments acknowledges that Dr. Teston reported on September 9, 2004, that following chemotherapy Cieslinski was "a little fatigued." (Tr. 628).

Cieslinski adds that Dr. Teston reported in March 2004 that fatigue had caused her to take leave from work (Tr. 636), and to show the 1-year duration requirement was met, Cieslinski adds that Dr. Teston reported in office notes from April 18, 2005, that Cieslinski had poor energy and had never recovered from her breast cancer. (Tr. 625). **[2]**  Cieslinski further argues the chemotherapy she received was documented to cause "low blood count levels" which she claims accounted for her fatigue.**[3]**

There are two parts to this issue. First, Cieslinski must establish a "medically severe impairment." As SSR 82-58 explains:

> To be found disabled under the law, an individual must have a medically determinable severe impairment, i.e., an impairment which has demonstrable

---

[2] For impairments to be disabling, they must meet a 12-month duration requirement. See 42 U.S.C. §423(d)(1)(A); 20 C.F.R. §404.1520(a)(4)(ii); 20 C.F. R. §404.1509;  20 C.F.R. Part 404, Subpt. P, App. 1, §1.00B2a (Listing of Impairments); and see *Barnhart v. Walton,*  535 U.S. 212, 219, 122 S.Ct. 1265, 1270, 152 L.Ed.2d 330 (2002)(Commissioner's interpretation of duration requirement of disability definition is reasonable).

[3] The significance of an impairment is measured by whether it has a *de minimis* effect on residual functional capacity.  See *Mowery v. Heckler*, 771 F.2d 966, 972 (6th Cir. 1985); *Farris v. Secretary*, 773 F.2d 85, 90 (6th Cir. 1985).  In order for an impairment to present a *de minimis* degree of severity it must be a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." See *Farris*, 773 at 90; *Salmi v. Secretary*, 774 F.2d 685, 693 (6th Cir. 1985). "In other words . . . the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen,* 880 F.2d at 863(citing *Farris,* 773 F.2s at 90 n.1).

8

>anatomical, physiological or psychological abnormalities. Such abnormalities are medically determinable if they manifest themselves through medical evidence consisting of symptoms, signs, and laboratory findings. Symptoms alone, however, do not constitute a basis for finding a medically determinable impairment.

>*Id.*, 1982 WL 31378, at *1.

Second, Cieslinski must establish that the alleged intensity of her symptoms is reasonable in view of the medical evidence. Again referring to SSR 82-58:

>Objective clinical findings which can be used to draw reasonable conclusions about the validity of the intensity and persistence of the symptom and about its effect on the individual's work capacity must be present.

*Id.*,1982 WL 31378, at *1.

The ALJ found that "After considering the evidence of record . . . claimant's medically determinable impairment[s] could have been reasonably expected to produce the alleged symptoms related to breast cancer and depression; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not totally credible." (Tr. 13).

Debilitating fatigue  "is not readily reduced to objective medical criteria, and the ALJ was not bound to accept as credible [claimant's] own testimony regarding her symptoms." *Cohen v. Secretary of Dept. of Health and Human Services,* 964 F.2d 524, 529 (6th Cir.1992). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, at *1.

9

The ALJ acknowledged SSR 96-7p and rejected Cieslinski's credibility. The ALJ's analysis was correct in recognizing that alleged disabling symptom turns on credibility. See *Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 726-27(6th Cir. Dec. 1, 2004). The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and Social Security Rulings 96-4p and 96-7p" (Tr. 12). Further, the ALJ did not limit the decision to simply the objective medical evidence, but evaluated "credibility of the statements based on a consideration of the entire case record."(Tr. 12).

The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act. See *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). Credibility determinations must contain clearly stated reasons and the ALJ's discussion of credibility did contain clearly stated reasons. See *Felisky v. Bowen*, 35 F.3d at 1036( citing *Auer v. Secretary of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987)). [4]

---

[4] The Commissioner has elaborated on this point requiring that the administrative decisions, " must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's

10

At the second step of sequential evaluation and for the second part of symptom evaluation the ALJ was not required to accept Cieslinski's testimony that she slept most of the day away but was required to base the decision on the medical evidence and the *reasonableness* of the alleged intensity. The medical evidence with respect to breast cancer and its alleged symptom of fatigue did not show that this alleged manifestation was present to suppress Cieslinski's ability to perform basic work activities at more than a *de minimis* level. Cieslinski has directed the Court to two statements from Dr. Teston including his September 2004 comment that Cieslinski was "a little fatigued." (Tr. 268). This fails to demonstrate that the ALJ erred in reaching the conclusion that Cieslinski's statements concerning the intensity, persistence and limiting effects of these symptoms were not totally credible

*Lack of Medical Expert:*

Cieslinski contends that medical expert testimony was necessary and refers the court to HALLEX provisions on situations warranting the appearance of a medical expert.  Courts have given substantial deference to the Social Security Administration's Hearings, Appeal and Litigation Law Manual (HALLEX).[5]

"The language of the regulations applicable to an ALJ's use of medical advisors is permissive, not mandatory: '[ALJ]s *may ask for and consider* the opinions of medical advisors on the nature and severity of your impairment(s) and whether your impairment(s) equals the

---

statements and the reasons for that weight."  Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2

[5] *See Bowie v. Commissioner of Soc. Sec.,* 539 F.3d 395, 399 (6th Cir. 2008)*;Russell v. Commissioner of SS*, 20 F.Supp.2d 1133, 1134 (W.D. Mich. 1998); *DeChirico v. Callahan*, 134 F.3d 1177 (2nd Cir. 1998); *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997).

11

requirements of any listed impairment...." 20 C.F.R. §§ 404.1527(f)(2) (emphasis added).'" *Coleman v. Chater* 1996 WL 279868, at * 4 (6th Cir.1996)(unreported).

HALLEX does not for the most part alter this general rule. See *Griffin v. Astrue,* 2009 WL 633043, at *10 (S.D. Ohio)( "An ALJ's decision whether a medical expert is necessary, however, is inherently discretionary. See HALLEX I-2-5-32, -34 (September 28, 2005)."). Presumably, what Cieslinski is referring to is HALLEX I-2-5-34 B, and the statement under this subsection that "[t]he ALJ must obtain an ME's opinion . . . To evaluate and interpret background medical test data (See I-2-5-14(D)., Medical Test Data.)." The scope of this exception to the general discretionary rule is limited to the situations where:

> . . . a report raises a question about the accuracy of the medical test results reported (or other evidence raises such a question), the ALJ may ask the source to submit the background medical test data. Such requests should be rare and, if they occur, interpretation and evaluation of the background medical test data would require a medical expert. (See I-2-5-34 B., When the ALJ Must Obtain ME Opinion.) *Id.*

The arguments presented, though, are that a medical advisor should have been consulted on the effects of chemotherapy on Cieslinski's functioning, and that the expert could have interpreted the laboratory test data contained in the file. Neither of these fit the foregoing exception for questionable medical test results. Accordingly, the ALJ's exercise of discretion not to summon a medical advisor for consultation was not an abuse of administrative process.

### *CONCLUSION*

12

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying disability insurance benefits is supported by substantial evidence. Accordingly, the denial of disability insurance benefits is affirmed.



                 s/James S. Gallas
                 United States Magistrate Judge